UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Albert J. Hauck, Jr.,

    Plaintiff,

v.

Commissioner of Social Security,

    Defendant.

Case No. 2:16-cv-970
Judge Michael H. Watson
Magistrate Judge Jolson

## OPINION AND ORDER

On August 2, 2017, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Court overrule Plaintiff's Statement of Errors and affirm the Commissioner's decision. R&R, ECF No. 15. Plaintiff, who is proceeding *pro se*, objected to the R&R. ECF No. 16. For the following reasons, the Court **OVERRULES** Plaintiff's objections, **AFFIRMS** and **ADOPTS** the R&R, and **DISMISSES** Plaintiff's Complaint.

### I.    BACKGROUND

Plaintiff protectively filed for Social Security Disability Insurance benefits, and Period of Disability benefits, on August 2, 2013, alleging that he had been disabled since December 30, 2008. ALJ Decision, ECF No. 8-2, at PAGEID # 76. Plaintiff's last date insured was March 31, 2011. *Id.* After his applications were denied, initially and upon reconsideration, Plaintiff went before Administrative Law Judge ("ALJ") Edmund E. Giorgione for a hearing. *Id.* On August 11, 2015, the ALJ issued an opinion denying Plaintiff benefits. *Id.* at

PAGEID ## 76–86. Following the Appeals Council's denial of his request for review, the ALJ's opinion became final on August 19, 2016. Appeals Council Decision, ECF No. 8-2, at PAGEID # 57.

Plaintiff subsequently filed a timely Complaint for review in this Court pursuant to 42 U.S.C. § 405(g). The Magistrate Judge analyzed Plaintiff's Statement of Errors and recommended the Court affirm the Commissioner's decision. Plaintiff objected to the Magistrate Judge's recommendation.

Plaintiff appears to object to some of the Magistrate Judge's factual accounts. *See generally* Obj., ECF No. 16. The Court adopts the Magistrate Judge's fact summary to the extent it is not objected to by Plaintiff and will discuss in more detail any factual discrepancies and other facts relevant to the resolution of Plaintiff's objections.

## II. STANDARD OF REVIEW

When a party objects to an R&R within the allotted time, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

It is well settled that, when objecting to an R&R, a party must make "specific written objections" to the magistrate judge's proposed findings and recommendations. Fed R. Civ. P. 72(b)(3). A general statement that the

magistrate judge erred does not aid judicial efficiency, the purpose "for which the use of magistrates [was] authorized." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Holl v. Potter*, No. C-1-09-618, 2011 WL 4337038, at *1 (S.D. Ohio Sept. 15, 2011), *aff'd*, 506 F. App'x 438 (2012) ("Objections that merely restate arguments raised in the memoranda considered by the Magistrate Judge are not proper, and the Court may consider such repetitive arguments waived.").

Furthermore, in Social Security cases, the Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to the proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). In this context, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance . . . .'" *Rogers*, 486 F.3d at 421 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Put another way, "[s]ubstantial evidence exists when a 'reasonable mind might accept' the relevant evidence 'as adequate to support a conclusion.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1997)).

### III. ANALYSIS

Plaintiff asserts numerous objections, which the Court has tried to classify into five main categories of objections: (1) inaccuracies with his date last

insured; (2) issues with the record evidence; (3) error as to the ALJ's mental determination at step two; (4) error as to the ALJ's residual functional capacity ("RFC") determination as not being supported by substantial evidence; and (5) error as to the ALJ's consideration of Plaintiff's activities of daily living ("ADL"). The Court will address each objection in turn.

### A. The ALJ's determination of Plaintiff's date last insured

An overarching issue that affects what evidence is even considered on *de novo* review is Plaintiff's date last insured. As the Magistrate Judge explained:

> A claimant must have sufficient quarters of coverage to be entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1); *see also* 20 C.F.R. § 404.10(a) ("Whether you have the required insured status depends on the number of quarters of coverage (QCs) you have acquired."). A claimant's insured status may expire, *see* 20 C.F.R. § 404.130(b), and the claimant is only entitled to disability benefits if he is able to show that he was "under a disability" within the meaning of the Social Security Act by his date last insured, 20 C.F.R. §§ 404.131(a), 404.320(b)(2); *see Kingery v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 598, 602 (S.D. Ohio 2015) (citing *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984)).
>
> Plaintiff struggles to understand this concept and conflates what he alleges should have been his onset date (a fall in the driveway in 2009) with his date last insured. (Doc. 14 at 3, PAGEID #: 817) ("I do not understand what it means when it is said by S.S.D. that my last insured date was March 2011, if I fell in the driveway in 2009."). Stated simply, Plaintiff questions how he could have paid into social security if he could not work. (*Id.*). The short answer is that Plaintiff's earning records reflected that his coverage continued for a time after he stopped working.
>
> Here, the ALJ found that Plaintiff's earning records demonstrated that he had acquired sufficient quarters of coverage to remain insured through March 31, 2011. (Tr. 22, PAGEID #: 78). Plaintiff's counsel cited the same date at the hearing before the ALJ. (Tr. 40, PAGEID #: 96) (noting that Plaintiff's date last insured was March 31, 2011). Hence, **Plaintiff had the burden of proving**

> **that he was disabled under the Social Security Act by that date.** *Kingery*, 142 F. Supp. 3d at 602.
>
> How Plaintiff can do so warrants additional discussion. Plaintiff's Statement of Errors claims generally that the ALJ erred in failing to address certain documents, many of which were created after March 31, 2011, his date last insured. These documents include a medical record from Dr. Steven Priano dated 10/18/2013 (Ex. 28F); medical records from Dr. Todd Hamilton dated 12/20/2013–12/23/2013 (Ex. 14F); a "Dr. Report" from Steven Severyn dated 6/17/14; a medical record dated 9/9/2014 (Ex. 16F); medical records of Riverside Methodist Hospital dated 10/8/2014 (Ex. 18F); a medical record of OhioHealth Neurological Physicians dated 12/10/2014–12/15/2014 (Ex. 19F); and a report from Dr. Devol dated 7/5/16. (*Id.* at 4–7). Plaintiff likewise cites residual functional capacity questionnaires dated October 22, 2013 (Ex. 33F) and December 23, 2013 (Ex. 15F). (*Id.* at 9).
>
> However, **"the ALJ generally only considers evidence from the alleged disability onset date through the date last insured."** *Lowery v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 700, 716 (S.D. Ohio 2012). Although consideration of evidence obtained after the date last insured is not prohibited, such evidence is only relevant to the extent that it "relate[s] back to the claimant's condition prior to the expiration of [his] date last insured." *Kingery*, 142 F. Supp. 3d at 602. Thus, to the extent that the ALJ failed to give weight to evidence because "it did not relate back to the claimant's functioning prior to his date last insured," his decision was not in error. (Tr. 27, PAGEID #: 83 (giving little weight to the opinions of Dr. Priano and Mr. Hamilton because they did not relate back)).

R&R 7–8, ECF No. 15 (emphasis added). Here, Plaintiff cites to numerous records dated after March 31, 2011, in both his Statement of Errors and his Objection to support his general contention that his impairments are more "severe" than the ALJ determined. Unfortunately, as the Magistrate Judge established in her R&R, the ALJ, and in turn the Court, cannot consider records after March 31, 2011, (Plaintiff's date last insured) unless they "relate back" to his

condition as it existed on that date or shed light on his physical impairments during the relevant time.

An impairment "relates back" if a later diagnosis indicates that Plaintiff, at the time of his date last insured, would not be able to perform the work determined by the RFC, not that the condition has worsened *since* the date last insured. *See King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205–06 (6th Cir. 1990); *see also Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (1986) (distinguishing between evidence that "reveal[s] further information about the claimant's ability" to comply with the RFC during the date last insured and "evidence show[ing a] condition has worsened since the [ALJ's] decision was made"). Here, the medical records Plaintiff cites do reasonably indicate his condition may have worsened over time; however, they do not cast doubt on the ALJ's determination that, prior to March 31, 2011, Plaintiff could perform light work with the limitations opined in the RFC. *See Oliver*, 804 F.2d at 966. Thus, upon *de novo* review, the Court adopts the Magistrate Judge's determination that the ALJ did not err when he mainly considered records prior to March 31, 2011, because the later medical records do not relate back.[1]

---

[1] Plaintiff also objects to the alleged onset date as being late 2009, not December 30, 2008. Obj. 4, ECF No. 16. There is also evidence that Plaintiff amended his alleged onset date to January 5, 2010, but that the ALJ failed to take into account the amended date. *See* Request to Amend, ECF No. 8-5, at PAGEID # 237. Regardless, the Court agrees with the Magistrate Judge's conclusion that any error in evaluating the alleged onset date was harmless because the ALJ considered the records from either relevant time period.

### B. Plaintiff's objections to the factual and medical record evidence

Plaintiff raises many objections to the factual and record evidence that ultimately are not determinative; for instance Plaintiff states: "I object that I fear doctors. I just don't trust most of them"; and "I object that muscle relaxers, blood pressure and diabetic medicines are the only medicines I take." Obj. 2, ECF No. 16. The Court finds that these and many of Plaintiff's similar objections are either irrelevant or harmless and thus will only address Plaintiff's specific objections that may have legal significance.

### C. Plaintiff's cognitive impairments

For the first time, Plaintiff raises in his objections the notion that his cognitive ability was severely diminished because "his mind was so messed up from pain and pressure in the back of [his] neck and head" that he could not remember someone's (presumably a doctor's) face or fill out the paperwork on his own. Obj. 3, ECF No. 16. He indicates that he could not, and cannot, concentrate due to the pain and pressure in his neck. *Id.* at 7. In addition to his own subjective complaints of pain, Plaintiff also relies on a RFC Questionnaire completed by Dr. Todd Hamilton on December 27, 2013, in which Dr. Hamilton indicates that Plaintiff's impairments would "frequently" affect his "attention & concentration required to perform simple work-related tasks." *Id.* at 4 (citing Dr. Hamilton Dec. 27, 2013, RFC, ECF No. 8-7, at PAGEID # 536).

The Court cannot address an issue on review that was not adequately raised for the Magistrate Judge's consideration in her R&R. Thus, because

Plaintiff failed to raise his cognitive issues in his Statement of Errors, his claim is now waived. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, (6th Cir. 2010) ("[A] claim raised for the first time in objections to a magistrate judge's report is deemed waived.") (internal quotation marks and citation omitted).

### D. The ALJ's consideration of the medical evidence

The Magistrate Judge construed Plaintiff's main objection to be that the ALJ's decision was not supported by substantial evidence, and Plaintiff objects.

Those objections include: "I object I had good range motion. I hurt. Bad then" (Obj. 2, ECF No. 16); "I object that Dr. Neltner did not want to see me back at last visit. Dr. Nelter ignored my complaints . . ." (*id.* at 3); disagreement with the Vocational Expert's testimony that he could do 6,000 jobs, "because . . . you have to be able to concentrate on what you are doing. . . . I cannot concentrate due to pain and pressure in my neck and head. I can't sit long due to the lower back pain and hip pain." (*id.* at 5); the ALJ's use of "the word minimal in thoracic spine" (*id.*); and that "my lower back is also Severe and is affecting my hips. [citing Exhibits 9F and 19F to indicate it was severe]" (*id.* at 6).

The Magistrate Judge addressed many of Plaintiff's assertions already, finding that:

> [T]he ALJ noted Plaintiff's surgeon, Dr. Neltner, found Plaintiff to be doing "fairly well" following his neck surgery and advised him "to gradually increase his activities as tolerated." (Tr. 25, PAGEID #: 81 (citing Tr. 382, PAGEID #: 382—February 8, 2010 appointment)). The ALJ likewise noted Dr. Neltner's review of post-operative data revealed stable alignment and positioning of the allograft and

hardware and normal EMG and nerve conduction velocity study. (*Id.* (citing Tr. 378, PAGEID #: 440—March 22, 2010 appointment)). These determinations, the ALJ observed, led Dr. Neltner to "release Mr. Hauck from active follow up." (*Id.*).

Although the ALJ noted Plaintiff's subsequent visit to Dr. Neltner in August 2010 due to headaches and posterior cervical pain, he cited Dr. Neltner's ultimate conclusion that stable alignment and positioning of the allograft and hardware remained. (Tr. 26, PAGEID #: 83 (*see* Tr. 517, PAGEID #: 579)). The ALJ also cited Dr. Neltner's opinion that Plaintiff's complaints could be attributable to his sinuses, statement that Plaintiff was "not interested in pursuing physical therapy at this time," and indication that she was "not planning on seeing Mr. Hauck back in active follow up at this juncture." (*Id.*). The ALJ further discussed imaging of Plaintiff's lumbar and thoracic spine in February 2010 and physical examination findings which he considered supportive of a conclusion that Plaintiff is capable of performing light work. (Tr. 26, PAGEID #: 82). As for Plaintiff's diabetes and hypertension, the ALJ cited evidence showing that Plaintiff's conditions were controlled by medication prior to the expiration of his date last insured. (*Id.*).

\* \* \*

Plaintiff claims that the ALJ's analysis of the medical evidence is deficient. At base, Plaintiff insists that his conditions are severe enough to warrant disability (*see generally* Docs. 12, 14) and asserts that his physicians aren't telling the whole story (*see, e.g.*, Doc. 12 at 5 ("I did not reject physical therapy. My neck hurts so bad I do not want anyone to touch it")). Those assertions alone do not fairly detract from the weight of the decision. *See Rhodes*, 2015 WL 4881574, at \*2; *see also Patrick v. Comm'r of Soc. Sec.*, No. 2:14-cv-2346, 2016 WL 67522, at \*2 (S.D. Ohio Jan. 6, 2016) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")).

R&R 10–11, ECF No. 15. A *de novo* review of the records affirms the Magistrate Judge's conclusion that the ALJ reasonably relied on the relevant medical evidence in concluding that Plaintiff was capable of performing light work during his alleged disability onset date of December 30, 2008, through March 31, 2011, his date last insured. Specifically, although Plaintiff disagrees with the characterization that Dr. Neltner did not want to see him for a follow-up visit, the objective record evidence indicates otherwise. *See* Dr. Nelter Report, ECF No. 8-7, at PAGEID ## 441, 444 (indicating she was releasing him from further follow-up appointments and also noting that he had "good range of motion in his neck" at a February 8, 2010 appointment). Likewise, as the Magistrate Judge pointed out in her R&R, Plaintiff's "assertions alone" as to the extent and severity of his pain do not detract from the objective medical evidence during the relevant time period. In sum, the Court finds that the ALJ's determination that Plaintiff was not disabled prior to March 31, 2011, is supported by substantial evidence.

**E. The ALJ's consideration of Plaintiff's activities of daily living (ADLs)**

Finally, Plaintiff objects to the ALJ's discussion of his ADLs, asserting: "I object that I said I go into the grocery store. Most of the time I wait in the car"; "I object I said mow grass all at once"; "I object to ever saying I played golf after my neck injury 2009. I could not, would not move my head, neck, back, or hips in that motion since 2009", Obj. 2–3, ECF No. 16, and he also objects that he did gardening work. *Id.* at 8. The Magistrate Judge addressed Plaintiff's concerns as they related to his request for a copy of the hearing, noting that:

Plaintiff's request is based on his belief that the ALJ erred in his consideration of Plaintiff's activities of daily living. (Doc. 13 at 8, PAGEID #: 811).

The hearing testimony concerning "yard or garden work" is as follows:

> Q. Do you do any yard or garden work?
> A. Yes, sir. I try to—I live in the middle of the woods. It used to take me about an hour and a half to cut my lawn, now it takes me two or three days. My son helps me a little bit with that. That's pretty much all the yard work I do. My wife does flowers and stuff out there.

(Tr. 51, PAGEID #: 107). Further, in the "social history" section of Plaintiff's psychiatric evaluation report, Dr. Hira noted that Plaintiff's "hobbies include playing pool and golf." (Tr. 398, PAGEID #: 460).

In determining that Plaintiff has a "mild limitation" in his activities of daily living, the ALJ found:

> The claimant is independent in his activities of daily living as he resides with his wife and two children. The claimant testified that he is able to do household chores such as cleaning, yard work, and gardening slowly. The claimant also testified that he is able to drive, grocery shop with his wife and attend to his personal grooming. Lastly, the claimant reportedly engages in hobbies such as playing pool and golf.

(Tr. 23, PAGEID #: 79). [The Commissioner] admits that "the ALJ did mistakenly note that Plaintiff did some gardening," but argues that the ALJ "reasonably considered that Plaintiff did some yard work and acknowledged that it was done 'slowly.'" (Doc. 13 at 9, PAGEID #: 812). [The Commissioner] further argues it was reasonable for the ALJ to consider Dr. Hira's report and "[t]here is no indication that Plaintiff was unable to do these hobbies after 2008, as Plaintiff now claims, from the medical record." (*Id.*).

Here, the ALJ found Plaintiff had just a mild limitation in daily living, given that he retained the ability to, *inter alia*, drive, clean, shop, and take care of his personal grooming. (*See* Tr. 23, PAGEID #: 79). **Even assuming the ALJ improperly found that Plaintiff could "garden[ ] slowly" and play golf, this Court has no reason to believe that the ALJ would have reached a different result**

> **absent those considerations.** Thus, any error is harmless and does not constitute an adequate reason to remand. *See Webb v. Comm'r of Soc. Sec.*, 2016 WL 791453, at *7, n.3 (N.D. Ohio Jan. 26, 2016) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 Fed. App'x 515, 524 (6th Cir. 2014) ("finding it appropriate to affirm an ALJ's decision based on mistakes where mistakes constituted harmless error and the 'agency would have made the same ultimate finding with the erroneous finding removed from the picture.'") (citations omitted)); *see also Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) ("[N]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.") (citation omitted)).

R&R 12–13, ECF No. 15 (emphasis added). With respect to whether Plaintiff said he golfs, a review of the psychiatric evaluation performed by Dr. Hira on August 4, 2010, states in his social history that:

> Patient was born and raised in Columbus. He has 4 sisters. He is 3rd out of 5 siblings. He graduated from high school. He was never in any special classes and was not suspended or expelled. He denies any history of abuse. He has been married for 25 years and they have 2 children a daughter who is 22 and a son who is 14. He lives with his wife and son. He use to be a drywall hanger and then started his own construction company and has currently been unemployed for awhile. **His hobbies include playing pool and golf.** He denies any legal problems and has not been in the military. He has shotguns, a pistol and a rifle at home which he keeps unloaded.

Dr. Hira Aug. 8, 2010, Report, ECF No. 8-7, at PAGEID # 460 (emphasis added). Contrary to Plaintiff's assertion, the record from Dr. Hira does not indicate that Plaintiff limited his time playing golf to prior to 2009. Moreover, upon *de novo* review, the Court agrees with the Magistrate Judge's conclusion

that any error by the ALJ in mentioning that Plaintiff played golf or gardened was harmless since there is substantial medical evidence to support the ALJ's findings without needing to consider whether Plaintiff golfed or gardened.

### IV. CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's objections, ECF No. 16, **AFFIRMS AND ADOPTS** the R&R, ECF No. 15, and **DISMISSES** Plaintiff's Complaint. The Clerk is **DIRECTED** to enter judgment in the Commissioner's favor and terminate this case.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**